IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHESAPEAKE FIFTH AVENUE
PARTNERS, LLC,

    Plaintiff,

v.                            Civil Action No. 3:08cv764

SOMERSET WALNUT HILL, LLC,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFF CHESAPEAKE FIFTH AVENUE PARTNERS, LLC'S REQUEST FOR ENTRY OF DEFAULT AND A DEFAULT JUDGMENT AGAINST DEFENDANT (Docket No. 10). For the following reasons, the motion will be granted.

**BACKGROUND**

On January 29, 2007, Chesapeake Fifth Avenue Partners, LLC, the Plaintiff, loaned $1,900,000 to Somerset Walnut Hill, LLC, the Defendant. (Compl. at Ex. 2 p. 1.) The normal interest rate on the loan was 12% annually, with the rate to increase by 5% (i.e., to 17%) or the maximum rate permitted by law if less than 17%, in the event of a default. (Id. at ¶¶ 2,9.) The loan was secured by two parcels of land. (Compl. at ¶ 10.) The parties

included a choice-of-law provision, stating that the law of the state of New York would govern the loan. (See Compl. at Ex. 2 ¶ 18; Id. at Ex. 3 § 7.16.)

Somerset defaulted on the loan. In fact, Chesapeake alleges that Somerset never repaid any money under the terms of the agreement.[1] (Id. at ¶ 14.) Chesapeake does not identify the date upon which it alleges Somerset first defaulted on its payment obligations. However, the first scheduled payment by Somereset was to occur on June 30, 2007; combined with Chesapeake's allegation that Somerset never made any payments, that date is the apparent date of default, as Somerset's failure to pay on that date was an unambiguous default. (See Compl. at Ex. 2 ¶¶ 4,8.)

In any event, Chesapeake filed a Complaint alleging, inter alia, breach of conduct and fraudulent inducement claims against Somerset on November 20, 2008. (See Compl. at Counts V, VI.) Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Chesapeake is a Delaware corporation, with its principal place of business in Maryland and members which are citizens of New York and Maryland, while Somerset is a Virginia limited liability corporation the members of which are all

---

[1] Somerset also alleges other material breaches of the loan agreement, but those issues are not germane to the instant matter.

Virginia residents, and the value of the controversy between them exceeds $75,000. (See id. at ¶¶ 1, 2.) Chesapeake sought both money damages and equitable relief. A summons was properly served on Somerset's registered agent on November 25, 2008. (See Summons (Docket Number 8).) Thus, Somerset was required to file its Answer on December 15, 2008.

Somerset never filed an Answer. Based on that failure, Chesapeake properly filed a Motion for Entry of Default on April 20, 2009, with appropriate supporting documentation. (See generally Pl. Mem.) The Clerk of Court entered a default for Chesapeake on April 20, 2009. (See Entry of Default (Docket Number 11.)

Chesapeake now seeks to have this Entry of Default reduced to a default judgment pursuant to Fed. R. Civ. P. 55(b)(1). Chesapeake seeks, at this juncture, only a monetary judgment in the amount of $2,876,593.12 with interest accruing daily in the amount of $1,219.37.[2]

---

[2] This amount includes "Participation Fees" rightfully owed to Chesapeake by Somerset pursuant to § 2.5 of the Loan Agreement. (See Compl. at Ex. 3.) Calculations conducted concerning the amounts set forth in Exhibit A attached to Chesapeake's motion reveal that Chesapeake's request is approximately correct; if anything, Chesapeake is slightly understating the amount owed by Somerset on the loan.

## DISCUSSION

Fed. R. Civ. P. 55(b)(1) provides that:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

If, however, the sum is not certain, or where there is evidence to suggest that the defendant was incompetent or an infant, the court must determine the amount of default. Fed. R. Civ. P. 55(b)(2). In this action, the only question is whether the sum is sufficiently "certain" to be amenable to entry of default pursuant to Rule 55(b)(1).

A sum is sufficiently certain, and a damages hearing on the default judgment is unnecessary, if "the damages are ascertained, determined, and fixed, 'or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" Eason v. Merrigan, 2004 WL 903756, *1 (D.Md. 2004) (quoting Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)). Generally, the principal and interest on a loan are sums certain within the meaning of Rule 55(b)(1). See United States v. Smith, 212 F.R.D. 480, 481 (M.D.N.C. 2002); Federal Deposit Ins. Corp.

v. Spartan Mining Co., Inc., 96 F.R.D. 677, 683 (S.D.W.Va. 1983) (holding same).

Chesapeake apparently no longer seeks any equitable remedies, requesting entry of a default judgment only on its computable contract damages. (Pl. Mem. at Aff. ¶ 11.) Therefore, entry of a default judgment is appropriate under Fed. R. Civ. P. 55(b)(1).

The remaining issue, therefore, is the amount of the default judgment to be entered. The Fourth Circuit has made clear that a choice-of-law provision in a contract is effectual in determining the law to be applied by a district court sitting in diversity and rendering a default judgment. See Questech Financial, LLC v. Trivedi, 109 Fed.Appx. 514, 516 (4th Cir. 2004)(unpublished). The parties have contractually agreed that the law of the state of New York would govern the contract and disputes arising under it. (See Compl. at Ex. 2 ¶ 18; Id. at Ex. 3 § 7.16.)

The maximum interest rate that may be charged on the principal of a loan in excess of $250,000 and not secured by a loan on a family residence is 25%. See N.Y. Gen. Oblig. Law § 5-501(6)(a); N.Y. Penal Law § 190.40; see also Machidera Inc. v. Toms, 258 A.D.2d 418, 685 N.Y.S.2d 719 (N.Y. App. Div. 1 1999) ("Contrary to defendant's claim, restrictions upon usurious

loans are not applicable to the loans here at issue since the amounts involved were over $250,000.") Even if non-interest costs push the effective interest rate over the statutory maximum, those costs are appropriately assessed so long as they are caused by the act of defaulting. Bristol Inv. Fund., Inc. v. Carnegie Intern. Corp., 210 F.Supp.2d 556, 563-64 (S.D.N.Y 2008). The contract rate in this case, therefore, does not exceed that which is legally permissible.

Under New York law, "[i]t is well established that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest . . . governs until the payment of the principal or until the contract is merged into a judgment. European American Bank v. Peddlers Pond Holding Corp., 185 A.D.2d 805, 806, 586 N.Y.S.2d 637 (App. Div. 2 1992) (collecting cases). Thus, while the contract rate always applies to prejudgment interest, after the lender receives a judgment in its favor, the statutory rate of interest applies - not the contract rate - unless there is a "clear, unambiguous, and unequivocal expression" that the contract rate is to be applied to the judgment. See Marine Management, Inc. v. Seco Management, Inc., 176 A.D.2d 252, 254, 574 N.Y.S.2d 207, 209 (App. Div. 2 1991). If such an expression is present, the contract rate governs until satisfaction of the judgment. See

Retirement Accounts, Inc. v. Pacst Realty, LLC, 49 A.D.3d 846, 847, 854 N.Y.S.2d 487, 489 (App. Div. 2 2008); see also Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) ("If parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language.").

The relevant promissory note in this action provides that:

> If judgment is entered against [Somerset] on this Note, the amount of the judgment so entered shall bear interest at the Default Rate as of the date of entry of the judgment, subject to any usury or other laws restricting such rate.

(Compl. at Ex. 2 ¶ 9.) The loan agreement itself provides that the interest rate in the event of default shall be goverened by the terms set forth in the Note. (See Compl. at Ex. 3 Art. 1; § 2.2.) The language in the Note certainly qualifies as a clear expression that interest on the judgment should be paid at the contract rate, rather than the statutory rate. See Bank of America, N.A. v. Solow, 19 Misc.3d 1121(A), *6 (N.Y.Sup. 2008) (unreported) (holding that contract language stating that the contract rate "shall continue to accrue from the due date thereof until such amount shall be paid in full (after as well as before judgment)" was sufficiently clear to trigger exception). Therefore, the default judgment in this case will

bear interest at the contract rate of 17% for both pre- and post-judgment interest. See <u>Retirement Accounts</u>, 854 N.Y.S.2d at 489.

## CONCLUSION

For the foregoing reasons, PLAINTIFF CHESAPEAKE FIFTH AVENUE PARTNERS, LLC'S REQUEST FOR DEFAULT JUDGMENT AGAINST DEFENDANT (Docket No. 10) is granted. An appropriate Order will enter.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
May 8, 2009
REP